1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOSEPH ARTHUR NUNN,                     No.  2:24-cv-00676-EFB (PC)

12              Petitioner,

13        v.                                 ORDER AND FINDINGS AND
                                             RECOMMENDATIONS
14   STEPHANIE KEENAN,

15              Respondent.

16

17        Petitioner, proceeding with counsel, brings an application for a writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254, requesting relief from his conviction for second-degree murder

19   (Cal. Penal Code § 187) in the Placer County Superior Court, and his sentence for same.  ECF

20   No. 1.  Also pending before the court are respondent's Answer and petitioner's Traverse.  ECF

21   Nos. 10, 11.  For the reasons set forth herein, the undersigned recommends the petition be denied.

22                          **FACTUAL BACKGROUND**

23        The following facts are derived from the California Court of Appeal's March 2, 2021,

24   opinion affirming the judgment in part.  *See People v. Nunn*, No. C083695, 2021 WL 791046

25   (Cal. Ct. App. Mar. 2, 2021).  The state court's factual recitation is entitled to deference absent

26   clear and convincing evidence to the contrary.  *Mejia v. Garcia*, 534 F.3d 1036, 1039 n.1 (9th Cir.

27   2008).  Here, neither party disputes the factual accuracy of the evidentiary record, as described in

28   the California Court of Appeal's direct appeal opinion, *see generally* ECF No. 1 at 3-29, ECF No.

                                        1

10 at 3-9, and upon review of the record, ECF No. 9, the undersigned finds it to accurately reflect the evidence adduced at trial.

*Prosecution Case*

Defendant rented a home in Roseville from his sister. As of September 2013, he had been subletting a room to Spindler for about six months.

At about 3:00 p.m. on September 30, 2013, Spindler called 911 to report defendant had discharged a pistol and then went back into the house. After Spindler next told the dispatcher defendant was walking around outside with a gun, he asked the dispatcher to send an officer. He next said, "Come on, you gonna do something punk? I'm not scared of you motherfucker." Spindler continued, "I not fucking scared, shoot me fucker"; after shots were fired, he said, "Fucking shot me. God damn it he fucking shot me. Fucking shot me." There were no more responses to the dispatcher after the shots.

Sometime after 3:00 p.m., neighbors heard a single gunshot followed by more shots 30 seconds or so later. Earlier that day, Rex Archer was in his backyard nearby when he heard a male voice who was emotionally worked up making loud, grunting noises and singing to rock music. It sounded like a tantrum. Archer later heard arguing and gunshots, and someone on the phone to 911. He heard someone say, "shoot me, Motherfucker," and name calling. This sounded like the same person who earlier made the grunting noises. After a series of shots, there was silence.

Sophoronia Bruno looked out of her window after hearing the first shot. Spindler was in the yard and appeared uninjured. He appeared to be having a conversation with someone. Spindler eventually walked out of her sight.

After hearing the gunshots, neighbors ran to defendant's front yard, where they found Spindler lying on the ground. Police were dispatched at around 3:15 p.m. They found Spindler lying face up on the grass, shirtless, and wearing boxer shorts with a sandal on his left foot. A cell phone was about two feet from his body. No weapon was on or near him.

Defendant was ordered out of the house; he came out and told the officers the gun was on the kitchen table. He was shaking, crying, and upset as he was handcuffed and placed in the back of the patrol car. An almost hysterical defendant said he could not believe he had shot someone and wished he had not done it.

Defendant talked to the police again about 10 to 15 minutes later, after calming down. He said that he and Spindler did not get along, with a major reoccurring issue being his housemate's dislike of those who used profanity. Defendant's friend Tom Hart would often come to the house

2

and frequently used profanity. Hart visited the house that day and he and defendant swore, causing Spindler to become very upset, which led to a very heated argument. Defendant said he did not know why he chose to use the gun, and repeatedly expressed disbelief that he shot Spindler. Defendant never mentioned being attacked, feeling threatened, or acting in self-defense. He said, "I can't believe I did something that stupid." Also, he said, "Why didn't I just walk away? Why did I have to shoot him?"

Defendant said he tried to do the right thing until the day of the shooting. He said, "Smart and brave people don't have the blood of another human being on their freaking hands." He exclaimed that he shamed his family, and that "some people belong behind bars and I'm seriously suspecting I'm one of them." He also said that he had to do his time.

After stating he wanted a lawyer, defendant made several spontaneous statements. Defendant said it was self-defense but he could have walked away. Apparently talking to himself, defendant said he gave Spindler a 30-day notice and could have just taken the beating. He asked himself why he did not call the police. Defendant also said Spindler needed to go and God had to have him do it. He claimed Spindler came at him twice.

Four shell casings were found in the area. Spindler died of gunshot wounds to the chest. He was at least a few feet away from defendant when he was shot, and died within a few minutes after being shot.

*The Defense*

Defendant testified that he shot Spindler out of fear for his life. Spindler was coming right at defendant when he was shot.

Defendant's problems with Spindler started when Spindler was moving into the house. Defendant banged Spindler's bicycle into a chest of drawers during the move, which caused Spindler to be upset with him. Spindler was obsessed and upset with a former roommate of his. Defendant thought Spindler was using marijuana every day but did not bring the matter up with him.

Defendant thought Spindler was mentally unstable. He found it odd that Spindler talked to himself. Spindler had said he would kill the person who had stolen his backpack. Knowing that Spindler was unstable, very obsessive, and had no problems talking about violence, defendant nonetheless did not ask Spindler to leave. Defendant finally decided to consider Spindler leaving on September 18, 2013, when he determined that if Spindler bit his head off for something three more times, he would ask him to leave.

On September 24, 2013, Spindler blew up at defendant and demanded he clean up paint chips defendant had scraped from Spindler's window. A day or two later, he yelled and swore profusely to a neighbor that the

neighbor had to move right now. On September 28, when defendant asked Spindler to turn down his stereo, Spindler replied that he was lucky he asked nicely.

On the day of the shooting, Hart came by the house and swore repeatedly. This upset Spindler, who came out from the garage, told Hart to stop, and returned to the garage. Hart continued swearing after Spindler left, which led Spindler to walk out of the garage and yell that he was sick of the swearing.

Spindler told defendant he was sick of him bringing people over to the house and sick of Hart's swearing. Calling defendant and Hart assholes, Spindler said he was not going to put up with it anymore. As Hart started to leave, Spindler held a rake and told Hart that he would kick Hart's ass if he returned. Spindler then started to swear at defendant. After a five-minute tirade, Spindler turned away from defendant, walking in circles in the front yard on the other side of the fence, cursing at defendant.

Staying in the patio area, defendant thought it would be dangerous to give Spindler a 30-day notice at that time. He waited an hour and then gave notice to Spindler after he appeared to have calmed down. Spindler called him a liar, swore at him again, and threatened to sue him.

Afraid that Spindler would come at him, defendant backed off. He went back into the house after Spindler came towards him and started walking in circles. He thought about leaving in one of his two vehicles, but his truck had a broken taillight and his car's battery was dead. Spindler yelled at him for locking him out of the garage. Defendant told Spindler he had lost his garage privileges, but agreed to open the garage after Spindler came towards him and told defendant to open the garage.

Defendant feared he would get beaten up but thought he could calm the situation down, so he unlocked the garage. Spindler came into the garage where an exercise machine was located, eventually exited, and yelled at defendant that he could not lock him out of the garage because he paid rent. Defendant replied he could have Hart come over and remove the exercise machine that was in the garage. Spindler yelled and came at defendant until he ran out of steam. After defendant told Spindler he was crazy, Spindler got in defendant's face and said, "That's right. I am crazy, and don't you forget it."

A scared and worried defendant went inside and locked himself in his bedroom. He got his gun from in between the mattress and box spring, believing he may need to defend himself. Seeing Spindler was in the front yard, defendant tried to go out the back. Spindler saw him and said, "Where do you think you're going, asshole?" Defendant turned around and saw Spindler coming towards him.

Defendant felt Spindler was going to attack him even though a picket fence stood between them. After defendant fired a warning shot, Spindler stopped, smiled, dialed his phone, and said he was calling the police to report defendant discharging a firearm in city limits. Believing the police would arrive shortly, defendant thought he should surrender peacefully. He first went to the backyard to surrender, but decided it was a terrible place to do this. Spindler was coming towards him and appeared to be aggressive. He told defendant that he was not afraid and yelled, "Shoot me, Motherfucker." Defendant shot him. Spindler was turning around and going in the opposite direction when defendant shot him in the back.

Defendant admitted Spindler never harmed or threatened defendant during the bicycle incident, never threatened or harmed Hart, and he never laid a hand on defendant when they discussed their issues. In September 2013, defendant had written two pages of journal entries about Spindler, but never mentioned threats or fear regarding the incidents involving the paint chips or the neighbor. Five days before the shooting, defendant had written that Spindler told him he would try to control his volume and anger. There was no mention of threats or fears in the journal. While he journaled about his grievances with Spindler, defendant never wrote that Spindler was unstable or unpredictable, or that he was afraid of Spindler.

After Spindler told defendant he had screwed up for discharging a firearm in a residential area, defendant was concerned about what the police would say. Even though there were hammers and other potential weapons in the garage, defendant let Spindler go in there to get his keys. Defendant knew Spindler did not have a gun and that he did not take one of the available potential weapons when he was in the garage. He admitted being much larger than Spindler.

Dennis Bradshaw roomed with Spindler in 2012. Spindler was not normally an angry person, but he would get aggressive with and threaten other people in the house. His frequent outbursts became a source of discussion at the home's weekly group meeting. Spindler once threatened to throw a chair at Bradshaw and told him he could throw him to the ground and beat him up. He had threatened to choke and hit two other residents and had gotten into a fight with a young man at a hospital. The fight started when the young man swung at Spindler after he taunted the young man.

Rowenna Morrill lived at the same halfway house as Spindler and Bradshaw. Spindler was a jerk who was difficult to live with. He was regularly aggressive or intimidating when frustrated.

Defendant's close friend Eric Doyle was at defendant's home about a week before the shooting. As he and defendant were in the garage cutting wood for an addition to the house, Spindler engaged in odd behavior, talking and singing to himself, at times in loud bursts. At one point, Spindler loudly

slammed the truck bed with all his force when Doyle and defendant were about 10 feet away. As Spindler walked into the house, he kicked the cords of saws that were plugged into an outside outlet.

The defense presented testimony of defendant's peaceful character from two people who attended Alcoholics Anonymous (AA) meetings with him and from his best friend in high school.

Defendant presented expert evidence that Spindler would have suffered from internal bleeding immediately after being shot. Blood drops went from the fence towards the front of the house. The larger group of blood drops were 16 feet nine inches from the fence and a smaller group of blood drops were four to five inches closer to the fence. Defendant could have been standing 16 feet nine inches from the fence when he shot Spindler. He was on the other side of the fence when he shot Spindler.

An acoustics expert testified it was not possible to determine distance from a 911 recording and the gun could have been a few feet from the phone when the shots were fired.

Spindler had marijuana in his system during the shooting. Marijuana is a potent psychoactive drug that can cause hallucinations, delusions, psychoses, and slower reactions, and can distort reality. Someone under the influence of marijuana can exhibit aggression, and may perceive a threat where none exists or feel invincible.

Dr. Kris Mohandie, a police, clinical, and forensic psychologist, testified as an expert regarding fight or flight, lag time, relapses in 12-step programs, and trauma following a deadly force encounter.

Fight or flight is an instinctive reaction when a person is presented with a threatening situation. In such situations, the options are to fight, flee, or (rarely) freeze. Eliminating flight as an option may make one feel trapped and more likely to fight.

A person may perceive events in slow motion or greatly sped up when in a threatening situation. The person may experience tunnel vision and make irrational decisions caused by not thinking clearly. Tunnel vision may cause the person to fail to perceive an escape route and focus on the threat in front of the person. A threat perceived over a period of time can enhance the fight or flight response.

Where a shooting victim engages in angry, obsessive behavior over six months, the shooter's perception that the victim was unpredictable would be enhanced, as would the shooter's sense of dread and fear. Threatening a third person on the day of the incident would increase the shooter's sense of fear and vulnerability. Combining this with the victim's volatile history would heighten the shooter's fight or flight response.

6

If the victim yells at the shooter for about 20 minutes and then advances on the shooter after the shooter goes into his house and gets a gun, then the shooter's perception of danger will increase. If the victim calls 911 after the shooter fires a warning shot and tells the shooter, "Come on, you gonna do something punk? I'm not scared of you motherfucker," and "Shoot me, Motherfucker," while moving toward the shooter would exponentially elevate the shooter's fight or flight response.

Lag time can cause a person to aim at one place on the body but actually hit another, such as when a police officer aims at a person's chest but shoots the person in the back. A person who relapses from a 12-step program would be more unpredictable and emotionally vulnerable.

Ending the life of another person can cause trauma and posttraumatic stress syndrome immediately after the event. Defendant's expressions of shame were consistent with someone suffering trauma after using deadly force that might be justified. His saying he should be behind bars is likewise not necessarily an indication of fact or an admission to having committed a crime. Defendant's statements after the shooting were consistent with an irrational guilt that is a component of trauma. Some of his statements to the police were also consistent with the various steps of 12-step programs.

*Rebuttal*

A house manager at the transitional house Spindler lived in during 2012 testified that Spindler did not stand out as a particularly problematic resident, and he was not a common topic at the weekly meetings.

Defendant was born in December 1964, and weighed 315 pounds when arrested. Spindler was born in March 1959, and weighed 170 pounds.

*Nunn*, No. C083695, 2021 WL 791046, at *1–5.

**PROCEDURAL HISTORY**

On September 9, 2014, an Information was filed in Placer County Superior Court charging petitioner with one count of murder (Cal. Penal Code § 187(a)), with the special enhancements of intentional and personal discharge of a firearm (Cal. Penal Code § 12022.53) and personal use of a firearm (Cal. Penal Code §§ 1203.06, 12022.5(a)(1)).  1 CT 1-3, 92.[1]  Trial commenced on

---

[1] Herein, the undersigned cites the Clerk's Transcript on Appeal as "CT" and the Reporter's Transcript on Appeal as "RT," with the title preceded by the volume number and followed by the page number.  These portions of the state record were lodged by respondent on December 19, 2024.  ECF No. 9.  The remaining lodged record on appeal, consisting of post-

1   October 5, 2016, and concluded on November 8, 2016.  2 CT 326-404.  At the conclusion of the

2   evidence, the jury was instructed, inter alia, on the defense of self-defense, the elements of first-

3   and second-degree murder, provocation, voluntary manslaughter on a heat of passion theory, and

4   voluntary manslaughter on an imperfect self-defense theory.  2 CT 432-41.  The jury returned

5   verdicts of not guilty of first-degree murder and guilty of second-degree murder, and true findings

6   on both charged enhancements.  2 CT 489-92.  On December 16, 2016, the trial court sentenced

7   petitioner to imprisonment for 40 years to life, which reflected a sentence of fifteen years to life

8   on count one with an enhancement of 25 years pursuant to Penal Code section 12022.53(d), as

9   well as an additional enhancement of 25 years pursuant to Penal Code section 12022.5(a), which

10  was stayed.  2 CT 579-81.

11          Petitioner sought a direct appeal in the California Court of Appeal for the Third Appellate

12  District, which, on March 2, 2021, affirmed the judgment in part in a reasoned opinion and

13  remanded the matter to the trial court to consider whether to exercise its discretion under new

14  state law to strike the sentencing enhancements.  ECF Nos. 9-14, 9-15, 9-16, 9-17, 9-18, 9-19.

15  Petitioner filed a petition for review in the California Supreme Court on April 4, 2021, which was

16  denied on May 12, 2021.  ECF Nos. 9-20, 9-21.

17          Petitioner then filed a petition for writ of habeas corpus in the Placer County Superior

18  Court on October 3, 2022, seeking reversal of his conviction due to the ineffectiveness of his trial

19  counsel.  ECF No. 9-22.  The Superior Court, pursuant to the Third Appellate District's March 2,

20  2021 remand order, resentenced petitioner on December 21, 2022, sentencing him to a term of

21  fifteen years to life for second-degree murder and to an additional determinate term of three years

22  for the enhancement under Penal Code section 12022.5(a).  ECF No. 9-23.  The court dismissed

23  the previously-imposed enhancement under 12022.5(d).  *Ibid.*  On December 23, 2022, the

24  Superior Court denied petitioner's petition for writ of habeas corpus in a reasoned opinion.  *Ibid.*

25  Petitioner then filed a petition for writ of habeas corpus in the California Court of Appeal for the

26

27  conviction filings and orders, are cited herein as subsets of ECF Number 9, with the subset
    number reflecting the item number provided in the notice of lodging.  *See* ECF No. 9.

28

8

1    Third Appellate District, raising the same grounds that had been raised in the trial court below.

2    ECF No. 9-24.  The appellate court denied it summarily on May 26, 2023.  ECF No. 9-25.

3    Petitioner subsequently filed a petition for writ of habeas corpus in the California Supreme Court,

4    raising the same grounds, and the California Supreme Court denied it summarily on November

5    29, 2023.  ECF Nos. 9-26, 9-27.

6        Petitioner commenced the instant action for habeas corpus relief under 28 U.S.C. § 2254

7    on March 4, 2024.  ECF No. 1.  Respondent does not dispute that the action is timely nor that

8    petitioner has exhausted in state court the claims for relief that he raises herein.  *See* ECF No. 10.

9    **LEGAL STANDARD FOR HABEAS CORPUS RELIEF UNDER 28 U.S.C. § 2254**

10        Title 28 U.S.C. § 2254 confers upon a federal district court the jurisdiction to consider a

11    petition for writ of habeas corpus challenging a state court conviction.  A writ of habeas corpus is

12    available under section 2254 only on the basis of some transgression of federal law binding on the

13    state courts.  *See Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1994); *Middleton v. Cupp*, 768 F.2d

14    1083, 1085 (9th Cir. 1985).  A federal writ is not available for alleged error in the interpretation

15    or application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v.*

16    *California*, 202 F.3d 1146, 1149 (9th Cir. 2000); *Middleton*, 768 F.2d at 1085.

17        Where a state court has resolved a federal constitutional claim on the merits, the petitioner

18    in federal court may not succeed on that claim absent a showing that the state court's resolution of

19    the claim was contrary to law or unreasonable.  28 U.S.C. § 2254(d).  Congress adopted this

20    standard when it revised the habeas statutes in 1996 as part of the Anti-terrorism and Effective

21    Death Penalty Act ("AEDPA").  To meet the standards, a petitioner must establish that the state

22    court's adjudication of the claim

23

24        (1) resulted in a decision that was contrary to, or involved an unreasonable
         application of, clearly established Federal law, as determined by the Supreme

25        Court of the United States; or

26        (2) resulted in a decision that was based on an unreasonable determination of the
         facts in light of the evidence presented in the State court proceeding.

27

28

1    28 U.S.C. § 2254(d).

2         In evaluating whether the petition satisfies § 2254(d), a federal court looks to the last

3    reasoned state court decision.  *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044,

4    1055 (9th Cir. 2004).  If the last reasoned state court decision adopts or substantially incorporates

5    the reasoning from a previous state court decision, the court may consider both decisions to

6    ascertain the reasoning of the last decision.  *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir.

7    2007) (en banc).

8         Under AEDPA, the state court's determination is given a high degree of deference and, in

9    considering whether either subsection of 2254(d) is met, the focus of the federal court's inquiry is

10   only the record that had been before the state court at the time of its adjudication.  *Cullen v.*

11   *Pinholster*, 563 U.S. 170, 180-82 (2011).  In order to satisfy section 2254(d), the petitioner "must

12   show that the state court's ruling on the claim being presented in federal court was so lacking in

13   justification that there was an error well understood and comprehended in existing law beyond

14   any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011);

15   *see also Amado v. Gonzalez*, 758 F.3d 1119, 1131-32 (9th Cir. 2014).  Thus, federal habeas relief

16   is precluded if "'fairminded jurists could disagree' on the correctness of the state court's

17   decision."  *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

18   This objective standard of reasonableness applies to review under both subsections of 28 U.S.C. §

19   2254(d).  *See Hibbler v. Benedetti*, 693 F.3d 1140, 1146-47 (9th Cir. 2012).

20        Under section 2254(d), the state court decision is not entitled to deference if either

21   subsection (d)(1) or (d)(2) is met.  *See* 28 U.S.C. § 2254(d) (listing subsections in the disjunctive).

22   Subsection (d)(1) states that no deference is owed if the state court decision reflects "a decision

23   that was contrary to, or involved an unreasonable application of, clearly established Federal law."

24   28 U.S.C. § 2254(d)(1).  "Clearly established Federal law" is that which was set forth in the

25   United States Supreme Court's "applicable holdings," *Carey v. Musladin*, 549 U.S. 70, 74 (2006),

26   rather than dicta, at the time the state court decided the issue. *Cannedy v. Adams*, 706 F.3d 1148,

27   1157 (9th Cir. 2013); *see also Stanley v. Schriro*, 598 F.3d 612, 617 (9th Cir. 2010)), *amended on*

28   *other grounds*, 733 F.3d 794 (9th Cir. 2013).  While "circuit court precedent may be persuasive in

10

1  determining what law is clearly established and whether a state court applied that law

2  unreasonably," *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010), circuit precedent may not be

3  "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal

4  rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013)

5  (citing *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam)).  Additionally, where courts

6  of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly

7  established Federal law" governing that issue.  *Carey*, 549 U.S. at 77.

8      A state court decision is "contrary to . . . clearly established Federal law" under subsection

9  (d)(1) if it applies a rule contradicting a holding of the Supreme Court or reaches a result different

10  from Supreme Court precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S.

11  634, 640 (2003).  A state court decision is an "unreasonable application" of clearly established

12  federal law if "the state court correctly identifies the governing legal principle . . . but

13  unreasonably applies it to the facts of the particular case."  *Bell v. Cone*, 535 U.S. 685, 694 (2002)

14  (citing *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000)).

15      Subsection 2254(d)(2) provides that an unreasonable factual determination by the state

16  court is not entitled to deference.  *See* 28 U.S.C. § 2254(d)(2). There are two ways a petitioner

17  may satisfy subsection (d)(2): he may show the state court's findings of fact "were not supported

18  by substantial evidence in the state court record" or he may "challenge the fact-finding process

19  itself on the ground it was deficient in some material way." *Hibbler*, 693 F.3d at 1146 (citing

20  *Taylor v. Maddox*, 366 F.3d 992, 999-1001 (9th Cir. 2004), *abrogated on other grounds by*

21  *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014)); *see also Hurles v. Ryan*, 752 F.3d 768,

22  790-91 (9th Cir. 2014) (if a state court makes factual findings without an opportunity for the

23  petitioner to present evidence, the fact-finding process is deficient and the state court opinion is

24  not entitled to deference), *cert. denied*, 574 U.S. 1071 (2014).

25      If a petitioner shows that section 2254(d)(1) or (d)(2) is satisfied, this court may review

26  the merits of the claim de novo.  28 U.S.C. § 2254(d); *see Panetti v. Quarterman*, 551 U.S. 930,

27  953 (2007); *Frantz v. Hazey*, 533 F.3d 724, 737 (9th Cir. 2008).  In many cases, the section

28  2254(d) analysis and the merits evaluation will substantially overlap.  Accordingly, "[a] holding

1    on habeas review that a state court error meets the § 2254(d) standard will often simultaneously

2    constitute a holding that the [substantive standard for habeas relief] is satisfied as well, so no

3    second inquiry will be necessary." *Frantz*, 533 F.3d at 736.  In such cases, relief may be granted

4    without further proceedings.  *See, e.g., Goldyn v. Hayes*, 444 F.3d 1062,  1070-71 (9th Cir. 2006)

5    (finding § 2254(d)(1) unreasonableness in the state court's conclusion that the state had proved all

6    elements of the crime, and granting petition); *Lewis v. Lewis*, 321 F.3d 824, 835 (9th Cir. 2003)

7    (finding § 2254(d)(1) unreasonableness in the state court's failure to conduct a constitutionally

8    sufficient inquiry into a defendant's jury selection challenge, and granting petition); *Williams v.*

9    *Ryan*, 623 F.3d 1258 (9th Cir. 2010) (finding § 2254(d)(1)  unreasonableness in the state court's

10    refusal to consider drug addiction as a mitigating factor at capital sentencing, and granting penalty

11    phase relief).  If, however, the facts are in dispute or the existence of constitutional error depends

12    on facts outside the existing record, an evidentiary hearing may be necessary.  *Frantz*, 533 F.3d at

13    745; *see also Earp*, 431 F.3d 1158 (remanding for evidentiary hearing after finding § 2254(d)

14    satisfied); *see generally* 28 U.S.C. § 2254(e)(2) (standard for granting of evidentiary hearing).

### ANALYSIS

16           Petitioner raises four claims in his petition for writ of habeas corpus: (1) the evidence was

17    insufficient to sustain his conviction for second-degree murder; (2) his due process rights to

18    present a defense were violated by the trial court's exclusion of defense evidence; (3) his due

19    process rights were violated by the court's imposition of certain fees; and (4) he was denied

20    effective assistance of counsel.  For the reasons set forth herein, the undersigned recommends the

21    petition be dismissed in its entirety.

22    **I.        Sufficiency of the Evidence of Second-Degree Murder**

23           In his first claim, petitioner argues that the prosecution's evidence was legally insufficient

24    to sustain his conviction for second-degree murder for two reasons.  He first argues that the

25    prosecution had failed to disprove his defense of self-defense, which would have resulted in a full

26    acquittal on count one.  ECF No. 1 at 12-14; *see* 2 CT 432-33.  In the alternative, he argues that

27    the prosecution failed to disprove his defense of imperfect self-defense or heat of passion, which,

28    if credited by the jury, would have resulted in his conviction for the lesser offense of voluntary

1  manslaughter.  ECF No. 1 at 12-15; *see* 2 CT 438-41.  Petitioner raised these arguments in his

2  direct appeal, which the Court of Appeal denied on the merits.  The undersigned concludes that

3  denial is entitled to deference.

4       **A.  Legal Standard**

5       The Due Process Clause "protects the accused against conviction except upon proof

6  beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

7  charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a

8  conviction if, "after viewing the evidence in the light most favorable to the prosecution, any

9  rational trier of fact could have found the essential elements of the crime beyond a reasonable

10 doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "[T]he dispositive question under

11 *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a

12 reasonable doubt.'"  *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson,* 443

13 U.S. at 318).  Put another way, "a reviewing court may set aside the jury's verdict of the ground

14 of insufficient evidence only if no rational trier of fact could have agreed with the jury."  *Cavazos*

15 *v. Smith*, 565 U.S. 1, 2 (2011).  In making this determination, the federal habeas court relies on

16 state law to define the substantive elements of the criminal offense.  *Jackson,* 443 U.S. at 324 n.

17 16; *Chein,* 373 F.3d at 983.

18      In federal habeas review of a claim of insufficient evidence, "all evidence must be

19 considered in the light most favorable to the prosecution."  *Ngo v. Giurbino*, 651 F.3d 1112, 1115

20 (9th Cir. 2011).  "*Jackson* leaves juries broad discretion in deciding what inferences to draw from

21 the evidence presented at trial," and it requires only that they draw "'reasonable inferences from

22 basic facts to ultimate facts.'"  *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam)

23 (citation omitted).  "'Circumstantial evidence and inferences drawn from it may be sufficient to

24 sustain a conviction.'"  *Walter v. Maass,* 45 F.3d 1355, 1358 (9th Cir. 1995) (citation omitted).

25      "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging

26 the sufficiency of the evidence used to obtain a state conviction on federal due process."  *Juan H.*

27 *v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).  In order to grant relief, the federal habeas court

28 must find that the decision of the state court rejecting an insufficiency of the evidence claim

reflected an objectively unreasonable application of *Jackson* and *Winship* to the facts of the case. *Ngo*, 651 F.3d at 1115; *Juan H.,* 408 F.3d at 1275 & n.13.  Thus, when a federal habeas court assesses a sufficiency of the evidence challenge to a state court conviction under AEDPA, "there is a double dose of deference that can rarely be surmounted."  *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011).

**B.  Last Reasoned State Court Decision**

Petitioner raised this claim on direct appeal in state court.  ECF No. 9-14.  In denying it, the state court held,

> Defendant contends there is insufficient evidence to support his murder conviction. We disagree.

> On appeal, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 317-320, 99 S.Ct. 2781, [61 L.Ed.2d 560]; *People v. Johnson* (1980) 26 Cal.3d 557, 578, 162 Cal.Rptr. 431, 606 P.2d 738.) "'Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]' [Citation.]" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206, 26 Cal.Rptr.2d 23, 864 P.2d 103.)

> Defendant characterizes the shooting as a "tragic incident" arising from a conflict with Spindler that defendant did not initiate. According to defendant, Spindler's "obsessive, aggressive, and unpredictable behavior" over the six months they lived together culminated in Spindler's threatening behavior to Hart and defendant on the day of the shooting, which led defendant to either fear for his life or caused him to act rashly and under the influence of his fight or flight response in the face of legally sufficient provocation. From this, he concludes there is insufficient evidence to support his murder conviction because the prosecution failed to present evidence negating voluntary manslaughter, either through imperfect self-defense or heat of passion, and self-defense.

> The prosecution presented evidence that defendant shot Spindler four times and killed him. He admitted the killing to the police and initially took responsibility for it, not claiming self-defense for nearly two and one-half hours, during which he made many incriminating statements. The man defendant shot was unarmed, and, wearing nothing but shorts, could not conceal any weapon.

> "'Second degree murder is the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree

14

1    murder.' [Citation.]" (*People v. Elmore* (2014) 59 Cal.4th 121, 133, 172
2    Cal.Rptr.3d 413, 325 P.3d 951.) "Malice may be either express (as when a
     defendant manifests a deliberate intention to take away the life of a fellow
3    creature) or implied. [Citation.] 'Malice is implied when the killing is proximately
     caused by "'an act, the natural consequences of which are dangerous to life,
4    which act was deliberately performed by a person who knows that his conduct
     endangers the life of another and who acts with conscious disregard for life.'"
5    [Citation.] In short, implied malice requires a defendant's awareness of engaging
     in conduct that endangers the life of another ....' [Citation.]" (*People v. Cravens*
6    (2012) 53 Cal.4th 500, 507, 136 Cal.Rptr.3d 40, 267 P.3d 1113.)

7    Firing multiple shots at the unarmed victim reasonably supports an inference of an
     intent to kill or implied malice. This inference is further support by defendant's
8    incriminating statements after his apprehension. That defendant had a handgun
     and was substantially larger than his unarmed victim could allow a jury to
9    reasonably disregard the defense evidence upon which his claim relies. We shall
     not second-guess the jury's implicit rejection of the defense evidence and
10   accordingly conclude substantial evidence supports defendant's conviction.

11   ECF No. 9-19 at 10-12; *Nunn*, 2021 WL 791046, at *5-6.  This reflects the last reasoned opinion

12   in the state court on the claim and thus is the focus of the court's analysis under section 2254(d).

13   *See Stanley*, 633 F.3d at 859; *Robinson*, 360 F.3d at 1055; ECF Nos. 9-20, 9-21.

14        **C. Discussion**

15        The state court reasonably applied clearly established federal law in finding sufficient

16   evidence to sustain petitioner's conviction for second-degree murder.  The state court identified

17   the clearly established federal law governing the claim and applied the legal rules set forth therein

18   to the facts in the record before it.  *See Bell*, 535 U.S. at 694.  That application was reasonable.

19   Viewing the record in the light most favorable to the prosecution, the state court aptly noted

20   evidence the jury may have credited to sustain their verdict of second-degree murder, including

21   its implicit finding of petitioner's mental state (express or implied malice) required for such a

22   verdict.  *See Jackson,* 443 U.S. at 324 n. 16; *Ngo*, 651 F.3d at 1115.  This evidence included

23   uncontroverted evidence that petitioner shot the victim multiple times; the incriminating

24   statements petitioner made shortly after the crime; evidence that petitioner was armed with a

25   handgun during his altercation with the victim, while the latter was not; and evidence that

26   petitioner was physically larger than the victim.  *Nunn*, 2021 WL 791046, at *6.  The state court

27   was reasonable in concluding that the sum of this evidence, and the reasonable inferences drawn

28   from it, could support the jury's finding that petitioner acted with intention to take the victim's

life or with conscious disregard for life when he shot the victim.  *See* 2 CT 434-35; *see generally Jackson*, 443 U.S. at 324-26 (despite defendant's claims of self-defense, the jury could credit circumstantial evidence to conclude he had possessed specific intent to kill, sufficient to sustain his conviction for first-degree murder); *People v. Nieto Benitez,* 4 Cal. 4th 91, 109-10 (1992) (collecting cases and holding, as a matter of California law, "where the defendant obtains a lethal weapon and then engages the victim in an argument, malice may be implied—from the circumstances leading to the killing—to support a conviction of second degree murder"); *see, e.g.*, *People v. Thomas*, 53 Cal.4th 771, 814-15 (2012) (holding evidence sufficient to sustain verdict of second degree murder on either an implied or express malice theory where defendant put gun to victim's head, threatened to "blow his brains out," and then the gun discharged twice); *People v. Boatman*, 221 Cal.App.4th 1253, 1263 (2013) (holding sufficient evidence defendant acted with implied malice shown where he, in jest, pointed gun at victim and cocked it, knowing it was loaded); *People v. Benson*, 210 Cal. App. 3d 1223 (1989) (implicit malice shown where defendant brandished loaded gun at victim during an argument and the gun discharged, killing the victim, although the defendant claimed the discharge was accidental); *In re Russell H.*, 196 Cal.App.3d 916, 920-21 (1987) (holding there was substantial evidence to support juvenile court's finding of second-degree implied malice murder where defendant pointed a loaded gun at the victim and threatened to shoot him, and the gun went off when a third party attempted to take it away).

   Petitioner argued to the state court, as he argues here, that he presented ample evidence in support of his defenses of self-defense, imperfect self-defense, and heat of passion, which was not adequately rebutted by the prosecution.  ECF No. 1 at 12-15; ECF No. 9-14 at 50-65; ECF No. 11 at 8-12. The state court's rejection of this argument was reasonable under *Jackson*.  The principal evidence on which petitioner relied at trial concerning his mental state at the time of the shooting was his own testimony, buttressed by evidence from percipient and expert witnesses whose testimonies were largely relevant to substantiate the reasonableness of petitioner's purported fear of the victim.  *See* 5 RT 1140-1389 (testimony of defendant); 6 RT 1435-1460, 1625-1640, 7 RT

1806-20 (defense witnesses Dennis Bradshaw, Rowenna Morrill, and Eric Doyle's testimonies concerning the victim's past acts of aggression); 6 RT 1532-64 (testimony of Thomas Hart describing victim's behavior the day of the shooting); 6 RT 1461-1531, 1565-1608, 1641-1732; 7 RT 1747-74 (expert testimonies corroborating the feasibility of petitioner's testimony describing the shooting); 6 RT 1578-1608 (evidence that victim may have been intoxicated with marijuana at the time of the crime, which could be consistent with him acting aggressively or with hypervigilance).  The jury, however, was entitled to find petitioner's testimony, including his description of his state of mind at the time of the shooting, fundamentally not credible and was entitled to give little weight to it and to the evidence he presented to corroborate it.  *See generally Hicks v. Reis*, 21 Cal. 2d 654, 659-60 (1943); *see, e.g., People v. Oropeza*, 151 Cal. App. 4th 73, 82 (2007).  Similarly, although the defense argued petitioner's post-crime statements should not be treated by the jury as inculpatory, and presented petitioner's testimony and expert testimony offering an alternate understanding of the meanings of those statements, the jury was entitled to find the prosecution's evidence, and reasonable inferences urged from it, to be more credible.  *See Hicks*, 21 Cal. 2d at 659-60.  In sum, the evidence presented by the prosecution sufficiently rebutted petitioner's defenses, in light of the jury's role as ultimate factfinder and judge of credibility.  Given the totality of the evidence before it, the jury could have reasonably concluded that the evidence that petitioner had shot, multiple times, a man who was unarmed and was smaller in stature, as well as his inculpatory statements after the crime, showed that petitioner did not subjectively, "actually believe in the need to defend himself against imminent peril to life or great bodily injury" at the time of the shooting, so as to sustain a defense of imperfect or perfect self-defense, *ibid*., nor that his faculties of reason were "obscured or disturbed by passion," to sustain a manslaughter verdict.  *See People v. Beltran*, 56 Cal. 4th 935, 942 (2013), *as modified on denial of reh'g* (Aug. 28, 2013).

   For these reasons, the state court's denial of claim 1 was a reasonable application of clearly established federal law and is entitled to deference.  The undersigned recommends the petition as to this claim be denied.

## II.     Exclusion of Defense Evidence

In his second claim, petitioner alleges that the trial court violated his right to present a defense under the Fifth, Sixth, and Fourteenth Amendments by excluding certain defense evidence.  The undersigned concludes that the state court reasonably applied clearly established federal law in denying this claim on the merits, and thus this claim should be denied pursuant to 28 U.S.C. section 2254(d)(1).

### A.   Relevant Facts

In a motion in limine, petitioner sought to have admitted testimony from proposed expert witness Dr. Kris Mohandie, a forensic psychologist.  The trial court ruled that Dr. Mohandie could testify as an expert witness in the area of forensic psychology and approved five areas of proffered testimony.  2 CT 384-88; 5 RT 1401-10; 6 RT 1411-20.  The court, however, sustained the prosecution's objection to the following proposed area of testimony:

> Subject precipitation is the role an injured person or decedent plays in his or her injury or demise through violent and provocative behavior. There are degrees of subject precipitation that range from no precipitation to significant subject precipitation. Teaching testimony would address this concept. The decedent reportedly engaged in behavior that, if true, is consistent with substantial subject precipitation, similar to that observed in suicide by cop cases.

2 CT 387.  The court ruled that the proposed testimony was inflammatory and had little probative value, as there was no evidence that the victim had been suicidal before his death.  2 CT 387-88; 6 RT 1418-20.  Subsequently, petitioner called Dr. Mohandie as an expert witness and, consistent with the court's ruling, he testified about various psychological aspects to the events described in petitioner's testimony, including the fight-or-flight response, lag times in shootings, common emotional responses to relapsing while in a sobriety program, and common trauma responses to killing a human being.  6 RT 1641-91; 7 RT 1692-1731.

### B.   Last Reasoned State Court Decision

Petitioner raised this claim in state court on direct appeal.  ECF No. 9-14 at 66-80.  The Court of Appeal denied it on the merits, holding the trial court had not abused its discretion or violated petitioner's constitutional rights, explaining,

////

18

1

2    Testimony on subject precipitation addresses the victim's state of mind, which is
of limited relevance in this murder prosecution. While the defendant's statement
3    of mind is at issue as an element of the charged offense, what the victim was
thinking is at best circumstantial evidence supporting an inference of how the
4    victim acted. A victim's actions are relevant in a murder prosecution to self-
defense, imperfect self-defense, and heat of passion voluntary manslaughter.
5    However, there was no evidence Spindler was suicidal, which substantially limits
the potential relevance of the proposed expert testimony. Allowing the expert to
6    testify on "suicide by cop" ran the risk of distracting the jury with the irrelevant
issue of whether Spindler was in fact suicidal. Furthermore, the expert testimony
7    would address only a small portion of Spindler's actions, his behavior after
defendant fired the warning shot, demonstrating he was armed and appeared
8    willing to employ the firearm. The crux of defendant's claims of self-defense,
imperfect self-defense, and heat of passion voluntary manslaughter was derived
9    from Spindler's actions before defendant got the gun and fired the warning shot,
Spindler's alleged aggressive and irrational behavior in the six months they
10    shared the house, and in his behavior towards Hart that allegedly put defendant in
the state of mind where he thought getting his gun and firing a warning shot was
11    warranted. Given the minimal relevance of this part of the expert testimony and
the real risk of distracting the jury with irrelevant and prejudicial issues, it was not
12    an abuse of discretion to limit the expert testimony as the trial court did here. This
is particularly true where, as here, the expert was allowed to testify extensively on
13    the much more relevant issues of fight or flight, lag time, and how the trauma of
killing another person can influence one's statements soon after the event.

14    We are not persuaded to reach a different conclusion by the cases defendant cites
in support of his claim. *Boyd v. City & County of San Francisco*, 576 F.3d 938
15    (9th Cir. 2009) (*Boyd*) involved a civil rights suit arising out of the fatal shooting
of a person by the police. (*Id*. at pp. 941-942.) The appealing plaintiffs contended
16    the trial court erred in allowing expert testimony that the decedent was trying to
commit "suicide by cop," claiming the testimony was irrelevant and prejudicial.
17    (*Id*. at pp. 942-943.) The plaintiffs in *Boyd* presented evidence the decedent was
trying to surrender to the police when he was fatally shot, while the officer
18    testified that the decedent "ignored police commands to surrender and instead sat
down on the dashboard of the SUV and reached both hands inside, as if to grab
19    something." (*Id*. at p. 944.) Given this dispute over the decedent's acts before the
shooting, the expert testimony was relevant to support one version of the facts
20    over another (*ibid*.), and it was not an abuse of discretion to admit it (*id*. at p.
946). The factual dispute in *Boyd* is not present here. That dispute, over whether
21    the decedent in fact surrendered to the police, makes the suicide by cop much
more relevant than in the case before us. The fact that a federal court found it was
22    not an abuse of discretion to admit this evidence under a very different set of facts
does not lead us to conclude that the trial court's decision here was an abuse of
23    discretion.

24    The other case cited by defendant, *Billington v. Smith* (9th Cir. 2002) 292 F.3d
1177, overruled on other grounds in *City of Los Angeles v. Mendez* (2017) 581
25    U.S.__, __ [198 L.Ed.2d 52, 59], is likewise inapposite. *Billington* was a police
officer's appeal from the denial of his claim of qualified immunity for shooting
26    and killing a motorist. (*Id*. at pp. 1179, 1183.) In so holding, the appellate court
found, "[t]he law does not condemn citizens to death any time they resist arrest.
27    Just as some decedents in police shooting cases appear to commit 'suicide by
cop,' it is conceivable that some police officers could commit 'homicide by self-
28    defense' by unconstitutionally and intentionally provoking an attack so that they

19

1   could respond to it with deadly force." (*Id.* at p. 1191.) This statement does not
2   support admitting the expert evidence in this case. Like *Boyd*, *Billington* is
    inapposite.

3   *Nunn*, 2021 WL 791046, at *7-8; LD 9-19 at 13-14. This decision is the last reasoned state court

4   decision on this claim. *See Stanley*, 633 F.3d at 859; ECF No. 9-20, 9-21.

5   ### C. Legal Standard

6        The Constitution guarantees criminal defendants the right to a meaningful opportunity to

7   present a complete defense, and it forbids the states from applying arbitrary rules of evidence

8   that exclude important defense evidence. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006);

9   *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *Washington v. Texas*, 388 U.S. 14 (1967).

10  This right stems from both the Compulsory Process Clause of the Sixth Amendment and the Due

11  Process Clause of the Fourteenth Amendment. *See Holmes*, 547 U.S. at 324; *Crane v. Kentucky*,

12  476 U.S. 683, 690 (1986); *California v. Trombetta*, 467 U.S. 479, 485 (1984)

13       A "defendant's right to present relevant evidence is not unlimited," *United States v.*

14  *Scheffer*, 523 U.S. 303, 308 (1998), however, and must as "bow to accommodate other legitimate

15  interests in the criminal trial process." *Chambers*, 410 U.S. at 295. These interests are

16  principally defined by the relevant legislative body, as "state and federal rulemakers have broad

17  latitude under the Constitution to establish rules excluding evidence from criminal trials. Such

18  rules do not abridge an accused's right to present a defense so long as they are not "'arbitrary' or

19  'disproportionate to the purposes they are designed to serve.'" *Scheffer*, 523 U.S. at 308

20  (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). For example, the Supreme Court has

21  recognized that "well-established rules of evidence permit trial judges to exclude evidence if its

22  probative value is outweighed by certain other facts such as unfair prejudice, confusion of the

23  issues, or potential to mislead the jury." *Holmes*, 547 U.S. at 326. On the other hand, the State

24  does violate a defendant's rights to due process and compulsory process when it prevents the

25  presentation of relevant, material defense evidence for reasons that are arbitrary or that serve no

26  rational state purpose. *See, e.g., Holmes*, 547 U.S. at 331; *Rock*, 483 U.S. 44, 61; *Crane*, 476

27  U.S. 683; *Chambers*, 410 U.S. at 302-303; *Washington*, 388 U.S. at 22.

28  ////

1       These same principles apply where the issue is not whether a state's statute or rule itself

2  violates the rights to due process and compulsory process, but where the question is whether the

3  state court erred under state evidentiary rules in a manner that also reflected a violation of the

4  defendant's constitutional rights.  *See Estelle v. McGuire*, 502 U.S. 62, 70 (1991); *Pulley v.*

5  *Harris*, 465 U.S. 37, 41 (1984); *Cudjo v. Ayers*, 698 F.3d 752, 767 (9th Cir. 2012); *see also*

6  *Larson v. Palmateer*, 515 F.3d 1057, 1065 (9th Cir. 2008) ("The correctness of the trial court's

7  evidentiary ruling as a matter of state law is irrelevant to our review" of whether the ruling

8  violated the constitutional right to present a defense); *Walters v. Maass*, 45 F.3d 1355, 1357 (9th

9  Cir. 1995) ("A state court's procedural or evidentiary ruling is not subject to federal habeas

10  review unless the ruling violates federal law, either by infringing upon a specific federal

11  constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial

12  guaranteed by due process.").  When confronted with an as-applied challenge, the reviewing

13  court must determine, as it would with a facial challenge, whether the trial court's exclusion of

14  defense evidence violated the defendant's rights to due process and compulsory process, i.e.,

15  whether the exclusion was arbitrary or whether it served a legitimate state purpose, whether its

16  effect was disproportionate to the state's interest, and whether the defense evidence at issue was

17  competent and material to the defense.  *See Crane*, 476 U.S. at 689-91; *Chambers*, 410 U.S. at

18  294-97; *see, e.g., Parle v. Runnels*, 505 F.3d 922, 932-33 (9th Cir. 2007); *DePetris v.*

19  *Kuykendall*, 239 F.3d 1057, 1061-63 (9th Cir. 2001).

20     **D.  Analysis**

21       Petitioner has not shown that the state court's denial of this claim was an unreasonable

22  application of clearly established federal law.  Petitioner argues that Dr. Mohandie's proposed

23  testimony was relevant to buttress inferences about the decedent's state of mind, specifically,

24  that the decedent "either had a death wish or was unduly rageful and extremely aggressive at the

25  time" immediately preceding the shooting, "that he was feral, and not even a gun could

26  discourage his imminent attack," and that he "did not have a regard for his own life."  ECF No. 1

27  at 19.  The state court was reasonable, however, in concluding that these inferences about the

28  decedent's state of mind were of limited relevance to the issues in material dispute for the jury,

1  which was charged with determining the petitioner's state of mind; the former is only relevant to

2  the latter to the extent that the decedent's state of mind crystallized into actions or other outward

3  expressions that then, in turn, precipitated a particular mental state in the petitioner.  It was also

4  reasonable for the state court to conclude that, without any other evidence of the decedent's

5  suicidality before his death, the proposed testimony would be unduly speculative and

6  inflammatory.  These reasons, singly or taken together, provide a valid basis to exclude the

7  proffered evidence consistent with the Sixth and Fourteenth Amendments.  *See Holmes*, 547 U.S.

8  at 326; *Washington*, 388 U.S. at 23.  Finally, given the totality of the court's evidentiary rulings

9  and the evidence the petitioner was permitted to introduce, including other evidence to indicate

10  to the jury the nature of the decedent's "rageful and extremely aggressive" behavior, *see* ECF

11  No. 1 at 19, and the effects such behavior may have had on petitioner, the exclusion of the

12  evidence at issue did not serve to deprive petitioner of his fundamental right to present a defense.

13  *See Chambers*, 410 U.S. 284.

14      Accordingly, the state court's denial of this claim was a reasonable application of clearly

15  established federal law and is entitled to deference.  The undersigned recommends claim 2 be

16  denied.

17      **III.    Imposition of Fees**

18      In his third claim for relief, petitioner alleges that the trial court violated his rights to due

19  process under the Fifth, Sixth, and Fourteenth Amendments by failing to determine through a

20  hearing whether petitioner had an ability to pay a "court operations assessment fee or court

21  facility criminal conviction fee," ECF No. 1 at 20, before imposing them.  ECF No. 1 at 20-22.

22  Petitioner has not demonstrated that this claim is cognizable nor that the state court's denial of

23  this claim was contrary to or an unreasonable application of clearly established federal law and

24  the undersigned recommends it be denied.

25      At sentencing, the trial court imposed a "court operations fee" of $40 under California

26  Penal Code section 1465.8 and a "court facility criminal conviction fee" of $30 under California

27  Government Code section 78373.  ECF No. 9-18 at 6; 2 CT 581.  Consistent with California

28  procedure at the time, the trial court did not hold a hearing or otherwise receive evidence on

1  petitioner's ability to pay either fee.  *See* 2 CT 278-79; 8 RT 2048-67.  While petitioner's direct

2  appeal was pending, the California Court of Appeal for the Second Appellate District issued

3  *People v. Dueñas*, 30 Cal.App.5th 1157 (2019), holding that a defendant's rights to due process

4  were violated by imposition of California's court operations fee and court facility criminal

5  conviction fee without a hearing on the defendant's ability to pay them.  Petitioner then filed

6  supplemental briefing requesting that the court in which his appeal was pending, the California

7  Court of Appeal for the Third Appellate District, adopt the reasoning of its sister court in *Dueñas*

8  and strike both fees from the judgment.  ECF No. 9-18 at 6, 13.  The Court of Appeal rejected

9  petitioner's claim on the merits, reiterating its prior holdings that *Dueñas* was wrongly decided

10  because there was no federal due process right in, as a blanket matter, having one's ability to pay

11  determined before these particular fees were assessed.  *Nunn*, 2021 WL 791046, at *9; ECF No.

12  9-19 at 16 (citing, inter alia, *People v. Caceres*, 39 Cal. App. 5th 917, 926-27 (2019)).

13      Petitioner's claim fails for two reasons.  First, petitioner fails to show that this claim is

14  cognizable in habeas corpus.  In his petition in this court, petitioner argues that "[t]he challenged

15  assessments violate due process where the state court record established that Petitioner lacked

16  the ability to pay."  ECF No. 1 at 21.  The Ninth Circuit has held, however, that even if such a

17  due process right did exist, by its plain terms, 28 U.S.C. section 2254 only permits this court to

18  grant relief from unlawful custody and gives the federal courts no authority to alter the fines and

19  fees assessed by state courts pursuant to state sentencing rules.  *Bailey v. Hill*, 599 F.3d 976, 981

20  (9th Cir. 2010).  This claim is therefore barred as noncognizable.

21      The claim is additionally foreclosed under section 2254(d)(1).  Petitioner cites no clearly

22  established federal law, i.e., holdings of the United States Supreme Court, acknowledging a

23  federal constitutional due process interest in a defendant's ability to pay determining the

24  imposition of a criminal fine, nor is the undersigned aware of any such authority.  For this

25  reason, the state court's rejection of the claim deserves deference.  *Carey*, 549 U.S. at 74-77.  In

26  his Traverse, petitioner posits in the alternative that his due process rights were violated by the

27  state failing to follow its own sentencing laws or by sentencing in an arbitrary and capricious

28  way.  ECF No. 11 at 14-15.  He has not, however, shown that the trial court acted arbitrarily and

23

1   capriciously when it sentenced him according to state statute.  He also has not shown that the

2   decision in *Dueñas* by one California appellate district in any way bound the decisions of another

3   appellate district or for any other reason served to create a state law in which petitioner possessed

4   a due process interest.  *See generally Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994)

5   ("Absent a showing of fundamental unfairness, a state court's misapplication of its own

6   sentencing laws does not justify federal habeas relief.").  Deference under section 2254(d)(1) is

7   therefore due.  *See generally Harrington*, 562 U.S. at 103 (describing petitioner's burden).

8          For these reasons, the undersigned recommends claim 3 be denied.

9   **IV.    Ineffective Assistance of Counsel**

10          In his fourth claim petitioner alleges that his counsel performed ineffectively at his trial,

11   in violation of his Sixth Amendment rights.  He alleges two subclaims: (1) counsel deficiently

12   failed "to adequately investigate and adduce recent studies showing how marijuana abuse leads a

13   person to experience violent psychotic episodes," and (2) counsel failed to present a full and fair

14   defense, including failing to prepare petitioner to testify, failing to object to the prosecutor's

15   improper closing argument, and failing to "adequately argue for sufficient jury instructions" on

16   heat of passion.  ECF No. 1 at 22-30.[2]  Petitioner presented this claim in state court, which

17   denied it in a reasoned opinion.  ECF No. 9-23.  The undersigned concludes that determination is

18   entitled to deference and recommends this claim be denied.

19          **A.  Legal Standard**

20          Under clearly established federal law, to prevail on a claim of ineffective assistance of

21   counsel, a petitioner must show that his trial counsel's performance "fell below an objective

22   standard of reasonableness" and that "there is a reasonable probability that, but for counsel's

23   unprofessional errors, the result of the proceeding would have been different."  *Strickland v.*

24   *Washington*, 466 U.S. 668, 687-88, 694 (1984).

25   ////

26   _____

27          [2] Petitioner also raises arguments concerning his entitlement to post-conviction discovery
     under California statute, but California statute has no role in governing discovery in federal court
28   and petitioner makes no argument explaining that statute's relevance to these proceedings.  *See*
     ECF No. 1 at 29-30; ECF No. 11 at 20-21.

1      Under the first prong of the *Strickland* test, a petitioner must show that counsel's conduct

2   failed to meet an objective standard of reasonableness.  *Strickland*, 466 U.S. at 687.  There is "a

3   'strong presumption' that counsel's representation was within the 'wide range' of reasonable

4   professional assistance."  *Richter*, 562 U.S. at 104 (quoting *Strickland,* 466 U.S. at 689).

5   Petitioner must rebut this presumption by demonstrating that his counsel's performance was

6   unreasonable under prevailing professional norms and was not the product of "sound trial

7   strategy."  *Strickland*, 466 U.S. at 688-89.  Where a petitioner alleges that counsel unreasonably

8   failed to investigate, the court must consider whether the limited investigation was itself

9   reasonable under objective standards, as "strategic choices made after thorough investigation of

10   law and facts relevant to plausible options are virtually unchallengeable," but "strategic choices

11   made after less than complete investigation are reasonable precisely to the extent that reasonable

12   professional judgment supports limitations on investigation."  *Id*. at 690-91; *see also Wiggins v.*

13   *Smith*, 539 U.S. 510, 522-23 (2003).

14      The second prong of the *Strickland* test requires a petitioner to show that counsel's

15   conduct prejudiced him.  *Strickland*, 466 U.S. at 691-92.  Prejudice is found where "there is a

16   reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

17   would have been different."  *Id*. at 694.  A reasonable probability is one "sufficient to undermine

18   confidence in the outcome."  *Id*. at 693.  "This does not require a showing that counsel's actions

19   'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice

20   standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'"

21   *Richter*, 562 U.S. at 112 (quoting *Strickland*, 466 U.S. at 693).  "The likelihood of a different

22   result must be substantial, not just conceivable."  *Id*.

23      Under clearly established federal law, in considering whether counsel's deficient

24   performance was reasonably probable to have affected the jury's verdict, the prejudice from

25   individual instances of deficient performance should be considered cumulatively.  *Strickland*,

26   466 U.S. at 695-96 ("Taking the unaffected findings as a given, and taking due account of the

27   effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if

28   the defendant has met the burden of showing that the decision reached would reasonably likely

1   have been different absent the errors.").  Thus, the court "must analyze each of [petitioner's]

2   claims separately to determine whether his counsel was deficient, but 'prejudice may result from

3   the cumulative impact of multiple deficiencies.'"  *Boyde v. Brown*, 404 F.3d 1159, 1175 (9th Cir.

4   2005) (quoting *Cooper v. Fitzharris*, 586 F.2d 1325, 1333 (9th Cir. 1978) (en banc)); *see also*

5   *Michaels v. Davis*, 51 F.4th 904, 930 (9th Cir. 2022); *Lang v. Cullen*, 725 F. Supp. 2d 925, 970-

6   71 (C.D. Cal. 2010).

7        When a court is considering a claim of ineffective assistance of counsel through the

8   AEDPA lens, the court's analysis is "doubly . . . deferential," *Richter*, 562 U.S. at 105, because,

9   in order to grant relief, the court must consider not only whether *Strickland*'s substantive

10  standard has been met, but whether each prong has been met so unequivocally that no reasonable

11  jurist could conclude otherwise.  *Id.*  Where the state court has denied relief upon determining

12  that the petitioner had not made a prima facie showing of his entitlement to relief, that

13  determination is considered a denial on the merits for the purposes of analysis under AEDPA.

14  *See Pinholster*, 563 U.S. at 190; *Ochoa v. Davis*, 50 F.4th 865, 888 (9th Cir. 2022); *Nunes v.*

15  *Mueller*, 350 F.3d 1045, 1054-55 (9th Cir. 2003).  In assessing the reasonableness of that denial

16  under 2254(d)(1), the federal court considers only the record that was before the state court at the

17  time of its adjudication.  *Pinholster*, 563 U.S. at 180-82.  Here, the last reasoned state decision

18  on this claim was issued by the Superior Court on December 23, 2022, *see* ECF Nos. 9-22, 9-23,

19  9-24, 9-25, 9-26, 9-27, in response to petitioner's petition for writ of habeas corpus filed in the

20  Superior Court on October 3, 2022, ECF No. 1, Ex. A; ECF No. 9-22, and therefore the

21  undersigned considers whether that court's decision deserves deference under section 2254(d)

22  based on the record that was before the it at the time of its ruling.

23       **B.  Analysis**

24       **1.  Failure to Investigate and Adduce Studies Concerning Marijuana Intoxication**

25       In his first subclaim, petitioner alleged in state court that his trial counsel's performance

26  was deficient because they "failed to adequately investigate and adduce at trial evidence that

27  would have demonstrated how Spindler's drug abuse led him to become psychotic and violent

28  toward Petitioner on the day in question[,] [s]pecifically, trial counsel failed to adequately

1   investigate and adduce recent studies showing how marijuana abuse leads a person to have

2   psychotic and violent episodes." ECF No. 1, Ex. A ¶¶ 39-40; ECF No. 9-22 ¶¶ 39-40.  Petitioner

3   included as exhibits two studies that he argued counsel were deficient for failing to present in

4   some way at trial.  ECF No. 1, Ex. A at 6; ECF No. 1 at Exs. E & F[3]; ECF No. 9-22 at 6.

5   Petitioner argued that the forensic evidence showing the decedent had consumed marijuana prior

6   to his death, in the context of petitioner's defense that his shootings were precipitated by the

7   decedent's aggression towards him, rendered it unreasonable for trial counsel to fail to introduce

8   these studies as evidence.  ECF No. 1, Ex. A at 5-8.

9           The state court denied this claim on the merits, finding that petitioner had not made a

10   prima facie showing of his entitlement to relief:

11          The petitioner alleges that his counsel failed to adequately investigate and adduce
            evidence at trial pertaining to the victim Spindler's drug use and how that
12          allegedly led him to be violent towards the petitioner.  They refer to recent studies
            that show how marijuana abuse leads a person to experience violent psychotic
13          episodes.  Specifically, they attached as Exhibit D a study published in 2020
            discussing the potency of current THC levels in marijuana and the association of
14          marijuana use with violence, paranoia and aggression.  While this study was not
            available for the defense to consider for trail preparation, the petitioner also
15          attached as Exhibit E another study from 2015 that discussed the various health
            risks and concerns regarding marijuana use, to include the inducement of
16          psychotic episodes, mania, schizophrenia, and bipolar disorder.

17          With respect to the victim's marijuana use, such evidence was presented through
            the defendant's testimony and the autopsy findings.  The Defense additionally
18          called Kenton Wong, who was deemed an expert in toxicology.  As summarized
            by the Court of Appeal, evidence about marijuana included the following:
19          "Spindler had marijuana in his system during the shooting.  Marijuana is a potent
            psychoactive drug that can cause hallucinations, delusions, paranoia, and slower
20          reactions, and can distort reality. Someone under the influence of marijuana can
            exhibit aggression, and may perceive a threat where none exists or feel
21          invincible." (*See* Appellate Decision, p.8.)  Given the evidence presented at trial,
            the court finds the performance of his attorneys was not deficient.  Furthermore,
22          any further evidence regarding the potential effects of marijuana may likely have
            been excluded under Evidence Code section 352; and the petitioner has failed to
23          show prejudice.

24   ECF No. 9-23 at 6-7.

25   ////

26

27          _____
            [3] In the Answer, respondent does not dispute that these exhibits were those that were
28   presented to the Superior Court as exhibits to petitioner's petition for writ of habeas corpus.  ECF
     No. 10 at 21.

                                              27

1    Petitioner fails to show that the state court's decision is undeserving of deference under

2    section 2254(d).  Petitioner makes no argument that the decision was premised on unreasonable

3    factual determinations under 2254(d)(2).  *See* ECF No. 1 at 22-27; ECF No. 11 at 15-18.

4    Regardless, the undersigned's own review of the state court record indicates the facts on which

5    the state court premised its denial were consistent with the record before it.  *See* ECF No. 1 at

6    Exs. E & F; ECF No. 9-19 at 8; 6 RT 1578-85.

7    Petitioner fails to show that the state court's decision was contrary to or an unreasonable

8    application of clearly established federal law.  To the extent the state court discounted

9    petitioner's exhibit generated in 2020, after the trial, *see* ECF No. 9-23 at 6, that was an apt

10    application of *Strickland*, which requires the habeas court to consider only whether trial

11    counsel's acts or omissions were deficient in light of what counsel actually knew or could have

12    known at the time of trial.  *See Richter*, 562 U.S. at 107; *Strickland*, 466 U.S. at 689.

13    The state court also reasonably applied clearly established state law in concluding that

14    petitioner had not shown deficient performance because the evidence at issue was largely

15    cumulative with evidence the jury already heard.  Defense counsel performs reasonably under

16    *Strickland* by refraining from adducing evidence that is duplicative of that which has already

17    been introduced.  *See, e.g., Schurz v. Ryan*, 730 F.3d 812, 815 (9th Cir. 2013).  Here, the state

18    court correctly noted that the evidence he now argues should have been presented to the jury was

19    largely cumulative with evidence the jury did hear, namely, a stipulation that the decedent had

20    marijuana in his blood and Dr. Wong's testimony about the effects marijuana may have on a user

21    of it, including increased aggression, paranoia, and misperception of reality.  This was a

22    reasonable conclusion based on the record before the state court, *compare* 6 RT 1578-85 *with*

23    ECF No. 1 at Ex. F, and comports with clearly established federal law.  *See Ryan*, 730 F.3d at

24    815.

25    The state court's denial was also reasonable insofar as it was premised on its observation

26    that the evidence at issue was likely inadmissible under California Evidence Code section 352.

27    ECF No. 9-23 at 7.  Defense counsel performs reasonably by refraining from making motions

28    that counsel has reason to believe would be futile.  *See, e.g., Ochoa v. Davis*, 50 F.4th 865, 889

1    (9th Cir. 2022); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996). Here, given that the trial

2    court opined that the evidence "may likely have been excluded" under the state Evidence Code,

3    ECF No. 9-23 at 7, a determination to which this court must defer, *see Bradshaw v. Richey*, 546

4    U.S. 74, 76 (2005), it would have been reasonable for trial defense counsel to have reached the

5    same conclusion and to have refrained from seeking to have admitted the evidence at issue for

6    this reason. To the extent the state court found trial counsel's performance not deficient on this

7    basis, therefore, that determination was reasonable under clearly established federal law.

8            Finally, the state court was reasonable in concluding that petitioner had not made a prima

9    facie showing of prejudice. Where, as here, the proffered evidence is duplicative in material part

10    with evidence that the jury heard, it is reasonable to conclude that the petitioner was not

11    prejudiced under *Strickland* by its omission. *See, e.g.*, *Wong v. Belmontes*, 558 U.S. 15, 22-23

12    (2009); *Lewis v. Andes*, 95 F.4th 1166, 1185 (9th Cir. 2024); *Schurz*, 730 F.3d at 816.

13            For all of these reasons, the undersigned concludes that the state court's denial of this

14    subclaim is entitled to deference.

15            **2.  Failure to Prepare Petitioner to Testify**

16            In state court, petitioner alleged that his trial counsel performed deficiently by failing to

17    appropriately prepare him to testify, alleging that counsel spent less than twenty minutes

18    discussing with petitioner his testimony and likely cross-examination. ECF No. 9-22 at ¶¶ 42-44

19    & pp. 16-17. The state court denied this, ruling,

20    > The petitioner alleges that his trial counsel failed to adequately prepare Mr. Nunn
21    > for his trial testimony in that they only spent twenty minutes preparing him to take
        the stand. The court finds that claim highly doubtful, and in any event not
22    > supported by any declaration by the petitioner. In a request for habeas relief, the
        petitioner is obliged to state with particularity the facts upon which the petitioner
23    > is based; vague, conclusory allegations are insufficient to warrant issuance of a
        writ. (*In re Swain* (1949) 34 Cal. 2d 300, 302.) Additionally, the petition should
24    > include copies of reasonably available documentary evidence supporting the
        claim, including pertinent portions of the trial transcripts and affidavits or
25    > declarations. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.) In this instance,
        petitioner fails to refer to his trial testimony transcripts and articulate what he
26    > could have or should have stated differently through better preparation. The court
        finds there is also no prejudice established with this claim.

27    ECF No. 9-23 at 7.

28

1    The language employed by the state court indicates that its denial was not on the merits,

2    but rather through the application of California's procedural rules embodied in *In re Swain*, 34

3    Cal. 2d 300 (1949) and *People v. Duvall*, 9 Cal.4th 464 (1995).  The Ninth Circuit has held that a

4    California state habeas court's "citation to *Duvall* and *Swain together* constitutes 'dismissal

5    without prejudice, with leave to amend to plead required facts with particularity,'" *Seeboth v.

6    Allenby*, 789 F.3d 1099, 1104 (9th Cir. 2015) (internal citation omitted), and does not reflect a

7    denial on the merits.  *Gaston v. Palmer*, 417 F.3d 1030, 1039 (9th Cir. 2005), *reh'g granted,

8    opinion modified*, 447 F.3d 1165 (9th Cir. 2006).  Here, the state court made explicit that it found

9    this subclaim inadequately pled and inadequately supported with reasonable documentary

10   evidence under state pleading rules and dismissed it for that reason.  This is true even though the

11   state court also briefly stated that there was no prejudice established by petitioner; the totality of

12   the state court's analysis indicates it did not engage with the merits of the federal question before

13   it on the issue of prejudice, but rather primarily considered the adequacy of petitioner's

14   allegations under state pleading requirements.  *See Coleman v. Thompson*, 501 U.S. 722, 732

15   (1991), *superseded on other grounds by* 28 U.S.C. § 2254(b) and *overruled on other grounds by

16   Martinez v. Ryan*, 566 U.S. 1 (2012).  As a matter of comity, therefore, this court must defer to

17   this state-law basis for the state court's dismissal of the subclaim.  *See ibid*.; *Gaston*, 417 F.3d at

18   1038-39.  Accordingly, the undersigned recommends this subclaim be dismissed.

### 3. Failure to Object to Prosecutor's Closing Argument

20   In state court, petitioner next alleged that trial counsel unreasonably failed to object to the

21   prosecutor's closing argument, wherein the prosecutor "stated 'God help us' . . . [which] was

22   impermissibly inflammatory and invoked religion, and accordingly clearly had the potential to

23   prejudicially affect the minds of jurors."  ECF No. 9-22 at 9.  The undersigned finds the state

24   court's rejection of this subclaim on the merits to be a reasonable under clearly established

25   federal law and entitled to deference.

26   In denying the claim in state habeas corpus, the Superior Court held,
     The Petitioner further argues that counsel was deficient by failing to object to the

27   prosecutor's comment during rebuttal argument that referred to God.  The
     prosecutor's final words to the jury were as follows: "And I leave you this this.  Is

28   it that easy, is it really that easy to get off on a charge of murder to just say, 'I was

1
2

scared,' with no other evidence? Because if it's that easy to get off shooting a man in cold blood, a man who was unarmed and on the phone with 911, then God help us." . . .

3
4
5
6
7

With respect to counsel's failure to object as constituting IAC, the court acknowledges that references to religion and God in argument may be objectionable, and as such counsel should be wary of such references. However, that does not necessarily mean that any reference is either misconduct or prejudicial error. (*See, i.e., People v. Tully* (2012) 54 Cal.4th 952, 1049.) In the present case the prosecutor's reference to "God" helping us was fleeting and can be construed as akin to a figure of speech. The petitioner in this instance has also failed to show prejudice.

8

ECF No. 9-23 at 8.

9
10

The state court was reasonable in concluding that petitioner had not shown trial counsel

had acted deficiently under *Strickland* by failing to object to the prosecutor's argument, given its

11

fleeting nature and its greater context. As part of their duties to provide effective representation

12

at trial, defense counsel had an obligation to make appropriate objections. *See, e.g., Zapata v.*

13

*Vasquez*, 788 F.3d 1106, 1112 (9th Cir. 2015). At the time of petitioner's trial, it was

14

misconduct under both federal constitutional law and California law for a prosecutor to invoke

15

religious authority in urging a particular verdict. *See Sandoval v. Calderon*, 241 F.3d 765, 776

16

(9th Cir. 2000); *People v. Tully*, 54 Cal. 4th 952, 1051 (2012). Nonetheless, the state court was

17

reasonable in concluding that the prosecutor's remarks were not misconduct, such that it was not

18

deficient for defense counsel to lodge no objection. The prosecutor's reference to "God" was not

19

an invocation of moral authority or appeal to jurors' religiosity, nor was does it appear on the

20

record to be part of a larger argument that was designed to inflame the passions of the jurors.

21

*See, e.g., Roybal v. Davis*, 148 F. Supp. 3d 958, 1045 (S.D. Cal. 2015). Instead, the totality of

22

this portion of the argument indicates that the prosecutor used the term "God help us" as a

23

colloquialism or figure of speech, which, as the state court observed, may have not been

24

particularly well-chosen, but did not amount to misconduct. *See Sechrest v. Baker*, 816 F. Supp.

25

2d 1017, 1055 (D. Nev. 2011). The state court reasonably concluded that defense counsel did

26

not perform deficiently by failing to object.

27

The state court was also reasonable in concluding that petitioner had not shown prejudice.

28

Although the comment at issue was the last statement made in the prosecutor's rebuttal

1   argument, which militates towards its prejudicial effect, the comment was brief, comprising less

2   than one line within the prosecutor's seventeen-page rebuttal argument.  8 RT 1994-2007; *see*

3   *also* 7 RT 1945-1967 (prosecutor's opening summation).  The nature of the comments carried

4   little religious meaning and were likely to be understood colloquially, placing this case in

5   contrast to those where the prosecutor has made express, repeated exhortations to religious

6   authority.  *See Sandoval*, 241 F.3d 765; *Roybal*, 148 F. Supp. 3d 958.  Finally, given the entirety

7   of the evidentiary record before the state court, the court was reasonable in finding the

8   prosecution's evidence of petitioner's culpability of second-degree murder to have been robust,

9   such that this comment by the prosecutor in closing argument was unlikely to have affected the

10   jury's verdict.  *See* ECF No. 9-23 at 4-5.  For all of these reasons, the state court was reasonable

11   in concluding that if defense counsel was deficient in failing to object to the prosecutor's

12   comment, petitioner had not shown a reasonable probability of a more favorable verdict had he

13   objected.  *See generally Zapata*, 788 F.3d at 1116-24.

14         Accordingly, the state court's denial of this subclaim is entitled to deference and the

15   undersigned recommends it be dismissed.

16         **4.   Failure to Request Jury Instructions**

17         In his fourth subclaim, petitioner alleged in state court that trial counsel performed

18   ineffectively in their advocacy concerning the jury instructions.  The undersigned concludes that

19   the state court's merits denial of this subclaim is entitled to deference.

20         In state court, petitioner alleged that trial counsel was deficient by "fail[ing] to adequately

21   argue for sufficient jury instructions on heat of passion."  ECF No. 9-22 ¶ 46.  Petitioner argued,

22         Trial counsel also failed to adequately argue for sufficient jury instructions with
       respect to the issue of heat of passion.  (*See, People v. Thomas* (Cal. Ct. App.
23       2013) 218 Cal.App.4th 630, 645-646; *People v. Dominguez* (Cal. Ct. App. 2021)
       66 Cal.App.5th 163 [quoting *People v Vasquez* (2018) 30 Cal.App.5th 786, 792
24       "A trial court must instruct on lesser included offenses when there is substantial
       evidence that the defendant committed the lesser offense instead of the greater."].)
25       Again, given that the key issue at trial related to Petitioner's intent and mental
       state, given the defense argument that Petitioner acted only out of a fear for his
26       own life, and in light of the clear evidence that Spindler was attempting to
       provoke and intimidate Petitioner at the time of the shooting [citations], adequate
27       and appropriate jury instructions regarding Petitioner's state of mind, potential
       justifications, and the role of heat of passion were of paramount importance to the
28       defense.  There can be no strategic nor tactical reason to failing to adequately

1    advocate for appropriate instructions relevant to these issues. . . . These errors
2    clearly prejudiced Petitioner.

3    ECF No. 9-22 at 9-10.  The state court denied this on the merits, holding that petitioner had not

4    made a prima facie showing of his entitlement to relief:

5        The petitioner finally claims that counsel failed to propose adequate jury
         instructions pertaining to heat of passion. . . . In this case, the lesser included
6        offense of Voluntary Manslaughter was given to the jury for consideration, and
         they also received CALCRIM Jury Instructions that included 505, 522, 570, 571,
7        and 640.  Here again, petitioner has failed to establish both deficient performance
         and prejudice.
8
         In a habeas petition, it is the petitioner's burden to state a prima facie case that he
9        is entitled to relief. [citations] In the present case, he has failed to state a prima
         facie basis for relief.
10
    ECF No. 9-23 at 8-9.
11
        The state court's decision was a reasonable application of *Strickland* and its progeny and
12
    therefore deserves deference under section 2254(d)(1).  In state court, petitioner only alleged
13
    vaguely that trial counsel had not "adequately advocated" for jury instructions that were
14
    "sufficient" on the issue of heat of passion, *see* ECF No. 9-22 ¶ 46 & p. 9, but failed to specify
15
    how counsel's advocacy transgressed professional norms nor what "sufficient" jury instructions
16
    would have been on this issue, beyond those for which counsel did advocate and which the jury
17
    did receive.  *See generally* 2 CT 431-43; 11 RT 1927-40.  As such, the state court was reasonable
18
    in concluding that petitioner had failed to make a prima facie showing that trial counsel
19
    performed some act or omission that was unreasonable by contemporaneous professional
20
    standards and that was not the product of "sound trial strategy."  *Strickland*, 466 U.S. at 688-89.
21
        The state court was also reasonable for concluding that petitioner had failed to make a
22
    prima facie showing of prejudice.  Petitioner made no specific argument in state court about
23
    prejudice on this issue, including, most notably, what instructions should have been given to the
24
    jury that were not.  *See* ECF No. 9-22 at 9-10.  To the extent his argument, including his citation
25
    to *People v. Dominguez*, 66 Cal.App.5th 163 (2021), implied that petitioner was prejudiced by
26
    the jury not receiving instructions on lesser-included offenses, that was contradicted by the
27
    record, as the state habeas court rightly observed.  *See* 2 CT 431, 438-43; 11 RT 1927-40; *see*
28

1  *generally Landrigan v. Schriro*, 550 U.S. 465, 474 (2007) (habeas corpus court may decline to

2  hold an evidentiary hearing "if the record refutes the applicant's factual allegations or otherwise

3  precludes habeas relief").  To the extent the petitioner's argument was that the jury was not

4  properly instructed on heat of passion, that also appears contradicted by the record, as the state

5  court also noted.  *See* 2 CT 438-39, 442-43; 11 RT 1927-40.  Petitioner thus has not shown that,

6  based on the record before it, the state court was unreasonable in denying this subclaim because it

7  failed to state a prima facie case of petitioner's entitlement to relief.

8  **CONCLUSION**

9        IT IS ORDERED that the Clerk of the Court shall assign a district judge to this action.

10  For the reasons set forth herein, IT IS HEREBY RECOMMENDED that the petition for writ of

11  habeas corpus (ECF No. 1) be denied.

12        These findings and recommendations are submitted to the United States District Judge

13  assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days

14  after being served with these findings and recommendations, any party may file written

15  objections with the court and serve a copy on all parties.  Such a document should be captioned

16  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

17  he shall also address whether a certificate of appealability should issue and, if so, why and as to

18  which issues.  *See* 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed

19  within fourteen days after service of the objections.  The parties are advised that failure to file

20  objections within the specified time may waive the right to appeal the District Court's order.

21  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

22  Dated: June 13, 2025

23                                              EDMUND F. BRENNAN
                                                UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28